# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| Jay D. Witkowski § § | |
| Petitioner, § § | Case No: |
| vs. § § | 4:23-cv-00085 |
| State of Montana, Pete Bludworth § § § | |
| Respondent § | |

# AMENDED MOTION FOR MODIFICATION OF SENTENCE
# POST CONVICTION RELIEF
# CONCURRENT SENTENCING

Comes now, Jay Witkowski, pro se litigant, would like to ask this Honorable Court to consider this pro se motion and ask this Honorable Court for a Modification of Sentence, asking Your Honor to order his two cases (DC-2017-05 and DC 2017-35) to run concurrently with each other and furthermore for a reduction in his sentence.

Mr. Witkowski was charged in the Seventeenth Judicial District Court of Valley County in case DC-2017-05 with Deliberate Homicide on February 7, 2017. He plead guilty pursuant to a plea agreement to a seventy-year term for deliberate homicide and a consecutive ten-year term for use of a dangerous weapon on August 16, 2017. Mr. Witkowski was sentenced on October 2, 2017.

Furthermore, Mr. Witkowski was charged in same Court, Case DC-2017-35 with several more charges that occurred on August 24, 2017. He

year prison term for aggravated kidnapping. This case was ordered to run consecutively to case DC-2017-05.

Mr. Witkowski respectfully pleads to this Honorable Court to grant this instant motion and wishes to bring the following arguments to the attention of the Court.

## ARGUMENT

Your Honor, reducing Mr. Witkowski's sentence would not diminish the seriousness of the offense or undermine his original sentence.

- Mr. Witkowski has already paid a substantial price for his malfeasance and no further justice would be served in keeping him imprisoned at this stage.

- Mr. Witkowski has more than paid his dues, not only by his long enough incarceration, but prison is a sufficient penalty for himself and a sufficient deterrent for other people who would plan such a crime.

The State would argue that a reduction in sentence would diminish deterrence but granting Mr. Witkowski's release would not result in unwarranted sentencing disparities because his original sentence would only be modified because of unforeseen, changed circumstances.

## ARGUMENT 1: INEFFECTIVE COUNSEL

Mr. Witkowski received Ineffective Counsel because counsel did not argue the case for him. Counsel deprived Mr. Witkowski of establishing important mitigating circumstances when he was not afforded the opportunity to present testimony to the court during portions of the proceedings. Counsel just went through the motions, nor did he try to discredit anything that the state brought before the court.

- Mr. Witkowski was denied his right to effective counsel. Mr. Witkowski had a fundamental right to effective assistance of counsel guaranteed by the *Sixth Amendment, the due process clause of the Fourteenth Amendment, and the Montana*

Constitution. *U.S. Const. amend. VI; Powell v. State of Alabama (1932),* 287 U.S. 45, 71, 53 S.Ct. 55, 65; *Mont. Const. art. II, § 24* ("In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. . . .")

- Counsel was ineffective in violation of the Sixth Amendment for failing to adequately investigate and present evidence of innocence and mitigating circumstances. Counsel failed to present significant mitigating factors, including Mr. Witkowski's history of substance abuse, mental health and potential eligibility for alternative sentencing programs such as inpatient rehabilitation.
- There was insufficient evidence to convict Mr. Witkowski of **deliberate homicide. There was no intent, no malice, no premeditation, no witnesses and no weapon. No lessor charge was included, I believe mitigated deliberate is a lessor charge included with a deliberate homicide charge.**
- Counsel assured Mr. Witkowski that he could get the charge mitigated, that there was no way this was deliberate homicide. Then all of a sudden counsel came to Mr. Witkowski saying "take the plea."
- Counsel told Mr. Witkowski and his family that if Mr. Witkowski would have been charged in any other county, he would not be charged with deliberate homicide.
- Counsel refused to Motion the court for a change of venue at Mr. Witkowski's request.
- Counsel did not investigate the case adequately, in that he did not conduct an independent investigation (did not hire an investigator or did not travel to the crime scene).
- Counsel repeatedly pressured Mr. Witkowski into taking the plea deal.
- Mr. Witkowski's case did NOT go in front of the grand jury and we are under the impression that ALL felony cases must go in front of the grand jury.
- Counsel put in a Motion to withdraw his firm from the case, but there is no signature on the motion.
- Counsel told Mr. Witkowski that they found the video in question, of the second vehicle and they(Mr. Toavs) believed the parked vehicle to be a truck.

3

- Counsel refused to withdraw Mr. Witkowski's plea, after being asked to do so. *Section 46-16-105(2)*, MCA, permits withdrawal of a plea of guilty if good cause is shown. The ultimate test of whether good cause is shown to withdraw a guilty plea is whether it was voluntary. However, numerous case-specific considerations may bear on the question of whether good cause is shown to withdraw a guilty plea including an inadequate colloquy, newly discovered evidence, intervening circumstances or any other reason for withdrawing a guilty plea that did not exist when the defendant pleaded guilty. *State v. Robinson, 2009 MT 170, 11, 350 Mont. 493, 208 P.3d 851*
- Counsel failed to object to evidence or challenge conflicting statements from experts or law enforcement.
- Counsel refused to look into specific things that Mr. Witkowski pointed out.
- Counsel lied to Mr. Witkowski about what he was actually pleading guilty to. Counsel told Mr. Witkowski that he was only pleading guilty to hitting the victim with his car.
- Counsel never argued the discrepancies in the reports or that the medical examiner report stated that the victims injuries were in fact consistent with being hit by a vehicle and that her stab wounds were not fatal or incapacitating.
- Counsel never argued the fact that both Mr. Witkowski and the victim were high on methamphetamines and without sleep for days.
- Counsel did not argue the fact that the video shows a second set of headlights coming toward the parked vehicle by the train tracks.
- **Mr. Witkowski still has not seen all the discovery and evidence in this case, he was shown a handful of photographs, when in fact, there seems to be many more.**
- No one argued that the victim's head injury could be consistent with the broken windshield wiper blade.
- Counsel did not attempt to get a lesser offense of mitigated deliberate homicide for Mr. Witkowski, proving that counsel was never working in his best interest.
- Counsel did not even inform Mr. Witkowski that he could appeal his sentence. Or make sure all evidence would be

4

usable on appeal, which it was not, due to fact of never being entered into district court file/record.
- Counsel failed to investigate or present any witnesses on Mr. Witkowski's behalf.
- It was the counsel's job to ensure all reasonably available mitigating and favorable information which was likely to benefit the client is presented to the court.
- Counsel would not look for the Black Dodge truck because he said "it would be too hard to find."
- Mr. Witkowski requested new counsel due to the ineffectiveness but was denied, violating his 6th Amendment right.
- Mr. Witkowski was denied due process because evidence could not be used during his appeal because it was not entered into evidence or district court record during his trial.
- Counsel was ineffective for failing to obtain a Mental Health Evaluation on Mr. Witkowski which was clearly warranted in this case. The courts took advantage of his mental disabilities.
- Mr. Witkowski truly believed that the people in the black Dodge truck were trying to kill him. He told the police and counsel about this truck but no one investigated the truck.
- The lead investigating officer (Luke Strommen) in this case is now in prison as well, for crimes that he committed before and during the course of this case, which asks the question of when they actually started investigating him, which could have led to a mistrial. His actions can now be called into question.
- This is the same investigating officer that did not believe Mr. Witkowski about the Black Dodge, and refused to look for it, and he also continued to question Mr. Witkowski after he asked for an attorney. Officer Strommen also knew that there were people on the same road January 1 2017, that were seen on video (from electrical substation, we were informed April 25, 2025) Officer Strommen called C.W. a couple days after the incident, on a recorded line, and asked him questions about seeing him and other people (billy) in a van, stopping by a culvert and putting something in then later that day stopping and picking something out of a culvert. When

5

**Officer Strommen was informed it was drugs that they hid, possible drug transaction/ trafficking, there was no investigation of it possibly being connected to the incident on the night before where someone lost their life, and there were no officers looking for any evidence , road was wide open, the day after the incident. Was prosecutor or defense attorney informed? I was never informed.**
- Mr. Witkowski walked to a house, knowing that they would call the police so he could get some help. He never tried to run.
- Mr. Witkowski fully cooperated with law enforcement and showed them everything and told them everything that he knew.
- Mr. Witkowski's constitutional rights to due process and a fair trial were denied. Even if individual errors do not warrant relief, their cumulative effect rendered Mr. Witkowski's trial fundamentally unfair. *See State v. Ferguson, 2005 MT 343, 126, 330 Mont. 103, 142,126 P.3d 463,490*. The doctrine of cumulative error requires reversal of a conviction where a number of errors, taken together, prejudiced a defendant's right to a fair trial.
- The trial court erred when it denied Mr. Witkowski's letter for new counsel, there was a complete breakdown of communication between client and counsel. After being accused of ineffective counsel, of course both counsel will not want to do anything in the best interest of Mr. Witkowski.
- The trial court erred when it denied Mr. Witkowski's letter for new counsel, denying it, ordering him to continue with the two he had or continue pro se.
- Mr. Witkowski was told that if he did not accept the plea agreement, the prosecution would make sure he never got out of prison. He was intimidated and threatened. "A prosecutor's misconduct may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial." *State v. Hayden, 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091*. ***Did officer Strommen inform prosecution or anyone about the vehicle he seen on the same road. Defense should have been informed.***

6

- Montana courts have recognized that sentencing must be proportional to the offense and the circumstances of the defendant. The Supreme Court has cautioned against imposing excessively harsh penalties. *(Montgomery v. Louisiana, 577 U.S. 190 (2016))*. The consecutive nature of Mr. Witkowski's sentences are unduly harsh, effectively eliminating any chance of meaningful rehabilitation or reintegration. Comparable cases in Montana have resulted in significantly lesser sentences, demonstrating an unwarranted sentencing disparity.
- In the Aggravated Kidnapping case, there was no kidnapping, Mr. Witkowski did not hold anyone against their will. This should have been an escape charge at most. Mr. Witkowski never saw his attorney in person. **There was no surveillance video from the jail and this was admitted to by the prosecutor/State and the courts. No one was detained, hurt, threatened or intimidated. The guard (Daria) followed Mr. Witkowski and his codefendant down the hall. Mr. Witkowski's codefendant was told by the prosecutor that he would get a lighter sentence if he said that Mr. Witkowski was the "mastermind." He only received 5 years while Mr. Witkowski received 40 years. The only thing that Mr. Witkowski did in this event was request the victim to give him the keys and then apologized to her and told her that she would not be hurt. Even when the court recognized Mr. Witkowski participation was minor.**
- **The cumulative effect of counsel's ineffective assistance deprived him of his sixth amendment right to counsel.**

See...**Ineffective Counsel:** Under the Sixth Amendment of the United States Constitution, it guarantees the right to effective assistance of counsel to defendants in criminal proceedings.

To prove ineffective assistance of counsel, a defendant must show:

- That their trial lawyer's conduct fell below an "objective standard of reasonableness" and,
- "a reasonable probability that, but for counsel's unprofessional errors," the outcome of the criminal proceeding would have been different.

7

**See...Ineffective Counsel:** The assistance of counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. ... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" A frequent ineffective assistance complaint is that the defense attorney did not obtain pretrial discovery. This is an easy issue for the prosecutor to help avoid simply by providing discovery as part of the case's preparation, regardless of whether a motion has been filed.

**See...Ineffective Counsel:** The Supreme Court has held that a citizen's constitutional right to counsel includes a right to effective assistance of counsel. Proving that your lawyer was ineffective at trial is one way to get his or her conviction overturned. To prove ineffective assistance, a defendant must show (1) that their lawyer's performance fell below an objective standard of reasonableness and (2) that the result of the proceeding would have been different if the attorney had not made unprofessional errors. See Strickland v. Washington, 466 US 668 (1984).

## ARGUMENT 2: MR. WITKOWSKI'S SUBSTANCE ABUSE

Mr. Witkowski has struggled with drugs since his early teens and he has never been offered or provided with appropriate treatment or rehabilitation opportunities. This was not mentioned in court and should have definitely been mentioned as a mitigating factor. Mr. Witkowski would love the chance to get Substance Abuse Treatment. There is direct evidence of impairment at the time of the offense and the chronic nature of Mr. Witkowski's addiction likely influenced his behavior and decision-making processes.

Relying on § 46-18-201(4)(p) (4), *When deferring imposition of sentence or suspending all or a portion of execution of sentence, the sentencing judge may impose upon the offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence,* Mr. Witkowski could have been granted an Inpatient Substance Abuse Treatment Program as opposed to prison due to his extensive drug usage.

**See...Addiction:** Addiction is often a root cause for criminal behavior, and individuals addicted to drugs and alcohol commit around 50% of all

8

crimes. The connection between drug use and illegal activity is why addiction treatment programs should be accessible and provide the best possible care for those who need help. The term "substance abuse" is a broad term that encompasses the use of drugs and alcohol. Substance abuse can lead to addiction, a chronic, often relapsing brain disease characterized by compulsive drug seeking and use despite harmful consequences. Substance abuse can also lead to other risky behaviors like crime.

In 2017, over 6% of the U.S. population had a substance use disorder, and that number has risen since then. Opioid addicts represent over 30% of people with substance use disorders, and this addiction rate is growing every year. Substance abuse and crime are closely intertwined. Historical data has shown that people who engage in substance abuse are more likely to commit crimes. For example, alcohol is often used as a social lubricant and can lead to violent behavior. Violent crime and substance abuse disorders are closely related. Substance abuse disorder is a risk factor for violence. Alcohol and drug use can lead to aggressive behavior and violence.

## ARGUMENT 3: MR. WITKOWSKI'S MENTAL HEALTH

Mr. Witkowski suffers from ADHD, Bipolar Disorder and Depression. He has learning and cognitive disabilities and was enrolled in Special Education and had an IEP throughout his schooling. ADHD and Depression have been linked to criminal activity. Counsel erred in not bringing this to the court's attention and not asking for a mental evaluation of Mr. Witkowski when it was clearly warranted.

*Montana Code Annotated 2023, TITLE 46. CRIMINAL PROCEDURE, CHAPTER 18. SENTENCE AND JUDGMENT, 1. The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. 2. The defendant acted under extreme duress or under the substantial domination of another person.*

Mental health disorders are recognized as mitigating factors in sentencing. The U.S. Supreme Court, in Eddings v. Oklahoma, 455 U.S. 104 (1982), held that a defendant's troubled childhood and emotional disturbance must be considered as mitigating evidence. Additionally, Arizona courts have acknowledged that mental health issues can influence behavior and should be weighed during sentencing.

9

**See...Self Medicating:** When you are experiencing emotional pain or coping with troubling symptoms of mental or physical illness, it can be tempting to try to numb these signals. You might drink alcohol, use illegal drugs, or use drugs that are legal, but taken improperly to achieve a desired effect. You might even binge on unhealthy food as a way to comfort yourself, or smoke cigarettes as a means to soothe anxiety or deal with stress. This is known as self-medicating, and can lead to serious substance abuse. Alcohol, prescribed drugs, illicit drugs, cigarettes, or marijuana are the most commonly abused substances.

Self-medicating is not without risk. The most significant danger of self-medicating, with any drug, is overdosing. More than 96,000 people died from drug overdoses between March 2020 and March 2021. There is additional danger in how multiple substances interact in the body, including with prescribed medications and alcohol.

Failing to treat the underlying physical or psychological need, and instead using substances that lead to abuse and dependency, puts you at serious risk in many other ways:

- As these substances circulate throughout the body, they cause damage to the brain, heart, lungs, liver, and other body systems. Immediate effects can include spiking blood pressure, stroke, and psychosis.
- Substance abuse can lead to appetite disruption, depriving the body of nutrients. Without adequate power to function or heal, formerly healthy body systems break down.
- Long-term substance abuse can result in cancer, heart and lung disease, and dramatically worsened mental illness.

**See...Mental Illness: Mental Illness and Involvement with Criminal Justice** - People with serious mental illness (SMI), particularly those who also have drug and alcohol problems, are more likely to become involved with the criminal justice system than the general population. They are also far more vulnerable to the negative consequences that often result. It is estimated that 10 times as many individuals who have a mental illness were confined in jails and prisons in 2014 than in state psychiatric hospitals across the country, putting them at high risk for victimization by other inmates, interruption of beneficial treatments and medications, and death in custody—largely due to suicide.

10

**See...Mental Illness:** Defendants whose underlying crime is the result of a mental health disorder can choose to be diverted into a specialty court, where they receive treatment instead of punishment. Many of these individuals, however, do not just suffer from a mental health disorder; instead, many have a "co-occurring disorder."

Approximately 8.9 million American adults have co-occurring mental health and substance use disorders, and almost half of individuals who meet diagnostic criteria for one disorder will also meet criteria for the other. Moreover, an extensive body of literature has shown that treatment for co-occurring disorders should be integrated and that individuals should receive appropriate mental health and substance abuse treatment from a single clinician or clinical team.

**See...ADHD: How ADHD May Lead to Trouble With the Law:** ADHD affects parts of your brain that control your emotions, behaviors, and impulses. That's why you might have issues with paying attention, staying organized, and sitting still. But it can also lead to more serious problems, like trouble with the law. ADHD affects the parts of your brain that help you plan, manage behavior, and control your emotions and impulses. Certain symptoms of ADHD are more likely to get you into legal trouble than others. Research has linked ADHD symptoms like inattention, impulsive behavior, and a lack of emotional control to the kinds of thoughts that cause people to commit crimes. ADHD also makes it harder to understand the consequences of your actions. When you have ADHD, you're more likely to have other conditions that can also get you into trouble. People with ADHD tend to get into trouble more than usual, often at an early age. They're two to three times more likely to be arrested, convicted, and put into prison than those without ADHD. Prison is a risky place when you have ADHD. The criminal justice system often doesn't diagnose or treat people with this condition. That may be why prison inmates with ADHD are more impaired in their day-to-day life than those who aren't in prison. When you have ADHD, you're more likely to also have a mood disorder. Untreated depression, anxiety, or bipolar disorder in prison leads to a high risk of suicide, especially in the first few weeks after someone goes to jail.

**See...Bipolar: Individuals With Bipolar Disorder and Their Relationship With the Criminal Justice System: A Critical Review:** Bipolar disorder is a severe and prevalent psychiatric disease. Poor outcomes include a high

11

frequency of criminal acts, imprisonments, and repeat offenses. Among patients with bipolar disorder, the frequency of violent criminal acts is higher than in the general population. The frequency is higher among patients with bipolar disorder and a comorbid substance use disorder than among those without either disorder. As a result, the prevalence of bipolar disorder among prisoners is high. In prison, patients' bipolar disorder symptoms can complicate their relationship with prison administrators, leading to an increased risk of multiple incarcerations. Moreover, the risk of suicide increases for these prisoners. Criminal acts are common among patients with bipolar disorder and are often associated with problems such as addiction. Thus it is important to improve the diagnosis and treatment of inmates with bipolar disorder.

## ARGUMENT 4: MR. WITKOWSKI'S MEDICAL CONDITIONS

Mr. Witkowski suffers from several serious medical issues. He has a heart condition known as Tachycardia, Kerataconus and has recently had back surgery. Mr. Witkowski is not getting the proper medical treatment for his medical issues in the Department of Corrections.

Tachycardia, a condition where the heart beats abnormally fast, can be serious depending on the underlying cause and duration. Tachycardia, or a fast heart rate, can pose risks including fainting, stroke, heart failure, and even cardiac arrest, especially with certain types like ventricular tachycardia. Such problems may include heart failure, stroke or sudden cardiac death. Treatment for tachycardia may include specific actions or movements, medicine, cardioversion, or surgery to control a rapid heartbeat.

Keratoconus is a progressive eye disease that causes the cornea, the clear front window of the eye, to become cone-shaped. This abnormal shape distorts vision and can lead to a number of symptoms. Keratoconus is a serious eye condition where the cornea thins and bulges, causing vision distortion and potential vision loss, although it rarely leads to complete blindness.

**See...DOC HEALTHCARE:** The Montana Innocence Project – The Impact of Poor Prison Healthcare on Incarcerated Individuals: Medical neglect kills hundreds of incarcerated individuals each year, despite the fact that they are the only group of people in the United States with a protected constitutional right to healthcare. Correctional facilities are frequently

understaffed, causing delays in processing inmate healthcare requests, or reduced quality to the care they provide. The anonymous source noted that, "Sometimes management is so strict that access is curtailed. I have seen some instances where there is a test that needs to be done with a patient, but the doctor has to go through too many barriers to get it done timely." "Staffing is also always a challenge," the source said. "But I think it's fair to say that correctional healthcare is expensive, so you will see efforts to manage that cost. When you over manage costs, I think that's necessarily at the expense of quality and access to care." Studies have shown that each year spent in prison takes 2 years off an individual's life expectancy. Without timely medical attention, many people develop worsening effects, or even death due to exacerbated conditions.

## ARGUMENT 5: DISPARITY IN SENTENCING

Sentencing disparity occurs when similar cases are not disposed similarly or when dissimilar cases are not disposed differently. Disparity implies that many offenders are not being sentenced in accordance with legally relevant factors. Disparity cannot be identified nor analyzed, however, except within a coherent sentencing system that has clear definitions of the aims and criteria for sentencing.

Sentencing is inherently retrospective, but many of the goals of sentencing rehabilitation, just punishment, and deterrence implicate prospective concerns. Compassionate release gives courts an opportunity to take a second look at sentences to account for unusual and changed circumstances.

"This discrepancy is a purely arbitrary byproduct of the points in time at which the offense conduct was prosecuted, and the defendant was sentenced; it has no basis in the offense conduct itself, in the character of the defendant, or even in the policy goals of sentencing espoused by our criminal justice system." *U.S. v Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 501 (2020).

See...**Sentence Disparity:** Disparity cannot be measured across sentencing systems, since the criteria for normative sentencing will vary according to whether the aims of sentencing are to provide just deserts, rehabilitation, incapacitation, or deterrence. Sentencing disparity only exists when there are variations in sentencing that cannot be explained

13

by factors related to the aims of sentencing. For many, the solution to the disparity problem lies in promoting foreseeability in sentencing by making the reasoning of the sentencing process more uniform. Disparity must be reduced by providing sentences with the knowledge required to render sentences in accordance with the factors relevant to the particular sentencing system.

The following cases were brought to Mr. Witkowski's attention. The following defendants were sentenced to the same charge that Mr. Witkowski was sentenced for, and they received significantly less time than him.

- Austin Kroll-McLaughlin - 40 years
- Linda Christianson - 40 years
- Elecia Bearcomesout - 50 years
- Sandra Cantrell - 50 years
- Montana Jane Getz - 50 years
- Leigh Medina - 55 years
- David Bernard - 60 years
- Rahim Calloway - 60 years
- Lindsay Hauge - 60 years
- Jay Hubber - 60 years
- Nicholas Jaeger - 60 years

## ARGUMENT 6: REHABILITATION

Mr. Witkowski has completed the two classes that Your Honor stipulated as a Parole restriction and he is currently signed up for the other one. Mr. Witkowski is not the same man that he was when he went into prison so many years ago. He is now sober, sober than he has ever been. He had held a job constantly during his incarceration, currently working in Laundry.

In Montana, the potential for rehabilitation is recognized as a mitigating factor in sentencing, Montana Courts also acknowledges cases where defendants argue their capacity for rehabilitation and the reduced likelihood of future danger to society.

Furthermore, Montana law provides for the possibility of alternative sentencing options, such as probation, community service, or rehabilitation programs, especially for non-violent offenses. The court

14

may consider mitigating factors like remorse or the potential for rehabilitation when determining the sentence.

In *US v. Nunez*, Chief Sanchez looked at the defendant's programming, continuing education and disciplinary issues and found a Petitioner with a Criminal History who demonstrated significant rehabilitative efforts.

In *US v. Redrick*, the judge found a sentence reduction to be "greatly favored" because of the defendant's rehabilitative efforts, programming, and continuing education in spite of the serious crimes and history of the Petitioner.

The amendment further clarifies that while rehabilitation is not, by itself, an extraordinary and compelling reason, it may be considered in combination with other circumstances.

### ARGUMENT 7: MR. WITKOWSKI'S HOME PLAN

Mr. Witkowski has an excellent home plan. He has the option to live with his mother or his sister, both of which will welcome him with open arms. He will obtain gainful employment and become a productive member of society. He will abide by all of the court ordered stipulations that the court imposed. He will attend outpatient treatment for substance abuse and mental health.

The Montana Department of Corrections recognizes that stable housing and employment significantly reduce recidivism rates. Given Mr. Witkowski's strong support system, he is an ideal candidate for sentence modification.

One of the most crucial elements of successful reintegration for former prisoners is having loved ones to help usher them through the process and Mr. Witkowski does have this waiting on him.

### CONCLUSION

If released, Mr. Witkowski understands that he will most likely still be under significant supervision—this is, effectively, still a prison sentence. Moreover, the court has the authority to "impose a term of probation or supervised release with or without conditions that do not exceed the unserved portion of the original term of imprisonment." Thus, to the extent the court deems it just and proper, the court could

order that I be released, but placed on home incarceration as a condition of supervised release. It is hard not to imagine how home incarceration should the court adopt the same, not remain "symbolic" while also accomplishing the other original purposes of the court's sentence. This is particularly true when one considers what home incarceration actually is:

See....**Home Confinement**

> c. Home Incarceration: Home Incarceration requires 24-hours-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court.

Ultimately, the court can devise any post-release conditions it sees fit to address any lingering concerns it may have. For instance, in *U.S. v. Gray*, the court ordered the release of a 64-year-old inmate, and it noted that post-release supervision "will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. Gray's conduct. Further incarceration is not needed to deter Mr. Gray from further offenses." *U.S. v. Gray, 2019 U.S. Dist. LEXIS 160593 at \*12-13 (S.D. Ind. September 20, 2019).*

Mr. Witkowski prays that this Honorable Court will see that he deserves a second chance at living his life. Mr. Witkowski prays this Honorable Court will grant his motion and order his sentences to run concurrently and further ask for a reduction in his sentence. A reduction in sentence would give Mr. Witkowski some hope in life after this incident that has changed his life forever. Mr. Witkowski maintains his innocence to this day and his story has never changed. Mr. Witkowski does realize that willful non-compliance or a violation of any of the set conditions may result in modification of the sentence or revocation by the court.

For the foregoing reasons, Mr. Witkowski respectfully requests that this Honorable Court:

1. Grant a reduction in sentence based on his mitigating factors, his rehabilitation, and relevant legal precedents.

2. Order his sentences to run concurrently with each other and furthermore grant him a reduction in the overall sentence due to all the arguments presented.

3. Vacate his sentence of Deliberate Homicide due to actual innocence.

4. Consider alternative sentencing options, including probation or supervised release under home incarceration, as permitted by Montana law and federal sentencing guidelines.

5. Order an evidentiary hearing to evaluate the impact of ineffective counsel and the prejudicial effect of errors at trial.

6. Grant any other relief this Court deems just and proper. Grant new trial.

Respectfully submitted this 6 day of May 2025

*[signature: Jay Witkowski]*

Jay Witkowski
#3002444
Montana State Prison
400 Conley Lake Road
Deer Lodge, MT 59722.