IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JAY DONALD WITKOWSKI, | Cause No. CV 23-85-GF-DWM |
| Petitioner, | |
| vs. | ORDER |
| JIM SALMONSEN;[1] ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

Petitioner Jay Donald Witkowski ("Witkowski"), a state prisoner proceeding pro se, seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Presently before the Court is his § 2254 petition and accompanying supplement/exhibits. (Docs. 1 & 1-1.) The Respondents answered and filed documents from the state court record. *See*, (Docs. 18 & 18-1 to 18-48.) Witkowski replied. (Doc. 24); *see also*, (Docs. 26, 27, 28.) The petition will be denied for the reasons explained below.

---

[1] When Witkowski filed his petition, he was incarcerated at Crossroads Correctional Center. He is now in custody of the Montana State Prison. *See*, (Doc. 8.) In a habeas petition, the respondent must be the Warden of the facility where the petitioner is held. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Accordingly, the caption has been amended to reflect the proper custodian.

1

## I.    Background

Witkowski challenges a net 80-year sentence for deliberate homicide, with a weapon enhancement, handed down in Montana's Seventeenth Judicial District, Valley County. *See*, (Doc. 1 at 3.)  The State alleged that in the early evening of December 31, 2016, Witkowski caused the death of Evelynn Garcia by stabbing her multiple times while she sat in the passenger seat of his car, clubbed her in the head with a tire iron, ran her over with his car, and then left her for dead in the middle of a remote section of highway in Valley County. *See, State v. Witkowski*, 407 Mont. 440, ¶2, 498 P.3d 1252 (Table).

The state district court summarized the underlying proceedings as follows:[2]

> Witkowski was charged with the offense of Deliberate Homicide, a Felony, in violation of §45-5-102(1)(a), MCA, on February 7, 2017.  On August 16, 2017, Witkowski appeared with counsel Clark Matthews and Terrance Toavs and pleaded guilty to the offense pursuant to a negotiated plea agreement.  At the change of plea hearing the Court advised Witkowski of his rights and made extensive inquiries as to whether he understood the plea and its consequences and whether he was satisfied with the assistance of his counsel. Witkowski answered in the affirmative to each inquiry and provided testimony to establish a factual basis for his guilty plea.  Following the entry of Witkowski's guilty plea and testimony in support, the Court found that his guilty plea was entered knowingly, intelligently, and voluntarily.  Just prior to the change of plea hearing the parties filed an Acknowledgment of Rights and Plea Agreement in which Witkowski acknowledged his right to proceed to trial and that he entered into the plea agreement voluntarily without any threat, coercion, force, or intimidation.
>
> One day after the change of plea hearing, the Court received, in chambers in Chinook, Blaine County, a handwritten letter from Witkowski dated and

---

[2] These facts are presumed to be correct. *See*, 28 U.S.C. § 2254(e)(1).

mailed on August 15, 2017.  Witkowski's letter requested that the Court appoint new counsel, asserting: that he had not had adequate representation due to his attorney's lack of interest in his case; that his attorneys ignored his "instructions" to look at certain evidence and file certain motions; that he did not have sufficient contact with his attorneys, and that his attorneys pressured him to enter the plea agreement.  The Court filed the original letter and the envelope in which it was mailed and provided copies to Witkowski and all counsel of record.  A hearing was held on the matter on September 20, 2017, and the Court denied Witkowski's request from the bench.  On September 25, 2017, the Court issued an order memorializing its decision on the matter.  On October 2, 2017, Witkowski was sentenced to 70 years in the Montana State Prison with a 10-year consecutive sentence imposed for a weapons enhancement.  Witkowski appealed, and on November 16, 2021, the Montana Supreme Court issued an opinion which upheld Witkowski's conviction but remanded the case to address errors in the final judgment which are unrelated to the pending petition.  An Amended Judgment was issued on December 21, 2021.

During the intervening time on December 16, 2021, Witkowski appeared pro se and filed a motion to withdraw guilty plea which was subsequently denied on March 24, 2022.  Witkowski's motion to withdraw was based on many of the same grounds alleged in [his postconviction] petition.

*See*, PCR Ord. (Doc. 18-36 at 1-3.)

**Postconviction Proceedings**

In his petition for postconviction relief, Witkowski alleged three basic theories for relief including: 1) ineffective assistance of counsel, *see,* (Doc. 18-23 at 4-5); *see also*, (Doc. 18-25 at 2);  2) judicial bias, *see*, (Doc. 18-23 at 4); *see also*, (Doc. 18-25 at 2); and 3) prosecutorial misconduct.  *See*, (Doc. 18-23 at 10). Witkowski also claimed that he had "new evidence" including a photo of a person matching the description of a person from a black Dodge pick-up that allegedly car jacked him on the night of the incident, as well as video from a train engine

showing the crime scene, purporting to support his innocence. (Doc. 18-23 at 10.)

Using the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984),[3] the district court first determined that Witkowski failed to identify sufficient facts to support his allegations of ineffective assistance of counsel. The court noted that Witkowski's allegations varied widely including that counsel failed to adequately investigate, failed to file motions Witkowski requested, failed to present or cross-examine witnesses, pressured him into accepting the plea agreement, lied to him, failed to leverage information regarding the Yellowstone County drug trade to secure leniency from the state, and failed to allege that he was emotionally distraught at the time of the commission of the offense. (Doc. 18-36 at 5.) The court found Witkowski presented these allegations as conclusory statements with no factual support and, as such, they were insufficient to state a claim for postconviction relief. (*Id*. at 5-6.)

Aside from Witkowski's allegation that his attorneys lied to him, which was extensively litigated and found to be untrue in the underlying criminal proceedings, Witkowski failed to show that any of the allegations, if true, would have constituted deficient performance under the first *Strickland* prong. While Witkowski alleged his attorneys failed to investigate certain matters, he provided no explanation of how the matters had any bearing on his defense. Similarly,

---

[3] The *Strickland* test is discussed in further detail below.

Witkowski alleged that his attorneys failed to file certain motions, but, in turn, failed to make a minimal showing that the motions had merit. The court also noted that Witkowski's allegation that his attorneys performed deficiently by advising him to accept the plea agreement was unconvincing, as such advice is commonly given in criminal proceedings. (*Id*. at 6.) Witkowski failed to allege any facts showing that the advice was not warranted. Additionally, Witkowski's allegation that his attorneys did not present or cross examine witnesses was also deficient since he could not show the acts were erroneous in light of his guilty plea. (*Id*.) The Court determined Witkowski's ineffective assistance claims were speculative, at best, and he failed to allege a factual basis to overcome the strong presumption that the representation counsel provided fell within the wide range of reasonable professional assistance. The claims were denied. (*Id*.)

The Court also determined that Witkowski failed to identify sufficient facts supporting his allegations of prosecutorial misconduct. Witkowski alleged that the State pressured him into entering a guilty plea by telling him if he proceeded to trial and was found guilty, the state would "make sure he got 120 years." The court noted that this allegation went to the voluntariness of his guilty plea. Under both state law and federal law, the court observed that a guilty plea is not improperly induced because it was entered to avoid the risk of a harsher sentence. (*Id*. at 7)(additional citations omitted). The court determined that even if the

prosecution did tell Witkowski that if he chose not to accept the plea they would pursue a harsher sentence, it would not render his plea involuntary or constitute grounds for prosecutorial misconduct. Thus, he failed to allege a viable basis to support the claim.

In relation to the judicial bias allegation, Witkowski asserted the court erred in considering his juvenile records at sentencing and by making statements advising Witkowski not to incriminate himself during the hearing requesting appointment of new counsel. The Court found the issue of the statements made during the hearing was addressed on direct appeal and would not be revisited in postconviction. Accordingly, the court only considered whether the sentencing court exhibited bias by considering Witkowski's juvenile records. The court noted that under the state sentencing policy relating to violent and repeat offenders, a court is authorized to review one's criminal history, and that the authorization extends to review of an offender's juvenile record. (*Id*. at 8)(*citing State v. Radi*, 185 Mont. 38, 44, 604 P. 2d 318, 322 (1979)). Accordingly, consideration of Witkowski's juvenile record was proper and necessary to effectuate the applicable sentencing policies in arriving at a proper sentence. (*Id*. at 8.)

Finally, the court found that Witkowski failed to identify sufficient facts to support his allegation that newly discovered evidence supported his claim of innocence. The court determined that neither the train video nor the photographic

evidence was truly newly discovered because both were available to Witkowski

prior to the trial date.  Also, Witkowski did not explain how the evidence "when

viewed in light of the evidence as a whole" would establish his innocence.  (*Id*. at

8-9)(*citing* Mont. Code Ann. §46-21-102).  Witkowski's petition was dismissed for

failure to state a claim for relief.

**Postconviction Appeal**

On postconviction appeal, Witkowski argued 1) the district court erred by

dismissing his PCR petition for failing to meet requisite pleading standards, 2)

ineffective assistance of counsel, 3) the district court erred in imposing a parole

condition requiring him to pay parole supervision fees while incarcerated, 4) the

district court erred in denying his motion to withdraw his guilty plea, and 5)

judicial bias at sentencing.  *Witkowski v. State*, 2023 MT 125N, 531 P. 3d 597

(Table); *see also*, (Doc. 18-45 at 3).  The Court noted that Witkowski's PCR

petition was disjointed and confusing as his briefing intermixed the issues he

asserted.  (*Id*. at 1, n. 1).

In relation to his IAC claims, the Court again looked to the two-pronged

*Strickland* test and closely examined Witkowski's history of appearances with trial

counsel, including the change of plea hearing and the substitution of counsel

hearing.  (*Id*. at 5-6.)

The Court noted that other than to assert that he was denied his

constitutional right to effective assistance, Witkowski failed to delineate any specifics as to how the lower court effectuated this denial. The court received Witkowski's complaints regarding counsel, held a hearing, and thoroughly explored Witkowski's claims. Considering the detailed inquiry at the hearing, combined with counsel's information and explanations, and Witkowski's failure to specify any specific deficiencies or problems with counsel, the Court found no error with the lower court's finding that Witkowski's claims regarding counsel were not "seemingly substantial." (*Id*. at 7.) Witkowski "utterly failed" to demonstrate counsel's performance was deficient, much less that counsel's deficient performance prejudiced his defense. Because Witkowski failed to demonstrate either *Strickland* prong, the IAC claim was properly dismissed. (*Id*.)

The Court then turned to Witkowski's reliance upon the train video and a photograph which he asserted were "never entered into evidence" and his claim that he was "convicted without a defense," again suggesting ineffective assistance of counsel. The Court noted that the State "vehemently" disputed Witkowski's assertion that the video shows another car. The Court also observed that the State's affidavit in support of the motion for leave to file the information discussed the video and described it as- "one vehicle, consistent with the vehicle Witkowski was driving, pulling up to and stopping before the railroad tracks." (*Id*. at 7-8.) The Court observed Witkowski's claims relative to the video were difficult to

8

follow.  First, since Witkowski pled guilty to homicide and no trial occurred, no

evidence was entered.  Additionally, Witkowski acknowledged that counsel had

the video prior to entry of his guilty plea, and he acknowledged to the district court

that he had the opportunity to go over the State's evidence with his counsel.  (*Id*. at

8.)  Thus, to the extent Witkowski asserted the video was "new" evidence because

it was somehow available to defense counsel, but not to him, he failed to establish

that "viewed in light of the evidence as a whole [it] would establish that

[Witkowski] did not engage in the criminal conduct for which [he] was

convicted[.]"  (*Id*. at 8)(*citing* Section 46-21-102(2), MCA).

 At sentencing the State outlined the evidence supporting its theory that

Witkowski stabbed the victim, beat her with a tire iron, and then struck her with his

car- which included the victim's blood on layers of Witkowski's clothing.  (*Id*.)

Thus, even if the video showed another vehicle at the train crossing, such would

not refute the evidence that Witkowski stabbed the victim.

 Relative to the photograph, Witkowski's argument was even more unclear.

Witkowski asserted he provided a copy of the photograph to defense counsel, and

he purported it matched the description of an individual that he originally gave to

law enforcement.  (*Id*. at 8).  Thus, the photograph was not "new" evidence.

Additionally, the photograph did nothing to refute the presence of the victim's

blood on Witkowski's clothing. Again, given Witkowski's guilty plea, no evidence

was admitted.  (*Id*.)

The Court noted Witkowski's claim that he was convicted without a defense and defended himself from what he perceived to be a threat to his own life was at odds with his assertion that he and the victim were under the influence of methamphetamine at the time of the offense and that fact should have been considered.  While Witkowski "appears to assert both that he defended himself and that he acted in response to a methamphetamine-induced fear for his life" he failed to articulate exactly what he defended himself from or what actions he took which were justified.  (*Id*. at 9.)  Witkowski failed to develop what the threat to his life was- actions of the other men or actions of the victim- or how being under the influence of methamphetamine provided justification for any acts.  (*Id*.)  Witkowski's statements were found to be nothing more than self-serving speculation which did not meet the requisite pleading standards to support relief under the state postconviction statute.  (*Id*.)(*citing* Section 46-21-104(1)(c), MCA.)

The Court also was not persuaded by Witkowski's assertion that the lower court abused its discretion by denying his motion to withdraw his guilty plea because he had been denied access to the train video and all the evidence.  (*Id*. at 10.)  Witkowski was not denied access to this evidence, as he acknowledged the opportunity to review all evidence provided by the State.  Moreover, the train video and photograph did not prove his innocence.  Further, Witkowski did not

express disagreement at the hearing when counsel advised that no motion to withdraw Witkowski's guilty plea would be filed. (*Id.*)

The Court found Witkowski's claim of judicial bias based upon the district court imposing a consecutive sentence for a subsequent attempted escape did not substantiate any inappropriate bias in the homicide case. Witkowski's attempt to intermix the two matters was improper. (*Id.*)

The Court ultimately determined Witkowski's petition and briefing failed to identify facts supporting the relief sought. At best, he set forth inconsistent speculations. The Court characterized Witkowski as "merely grasp[ing] at straws with his meritless claims for postconviction relief." (*Id.*) There was no credible ineffective assistance claim nor error on the part of the district court in denying the postconviction petition without a hearing. The dismissal of the petition was affirmed.

## II.    Witkowski's Claims

It appears Witkowski intends to advance the same general categories of claims before this Court as he did in his underlying postconviction petition: 1) ineffective assistance of counsel, *see*, (Doc. 1 at 4), *see also*, (Doc. 1-1 at 1-5); 2) prosecutorial misconduct, (Doc. 1 at 5); and judicial bias. (*Id.*) Witkowski also seems to allege his constitutional rights were violated because he was not indicted by a grand jury, (*Id.* at 4); *see also*, (Doc. 1-1 at 6); (Doc. 24 at 7-9), that his

11

sentence is excessive (Doc. 1 at 4); and that a *Brady* violation occurred (Doc. 1 at 4.)

Witkowski asks that he be granted a new trial or, alternatively, that the matter be sent back to the state court for proceedings with new counsel. (Doc. 1 at 7.) He also believes the deliberate homicide conviction could be reduced to mitigated deliberate homicide, vehicular homicide, or negligent homicide, as he did not have intent or act knowingly. (*Id*.) Witkowski asks that he be allowed to withdraw his 2017 guilty plea. (Doc. 31.)

Much like his state claims, the claims filed in the present petition are difficult to follow. Witkowski provides very limited factual support for his claims in the petition itself and instead references an exhibit consisting of 171 pages that include: his notes, documents from his various state proceedings, portions of and/or incomplete reports, copies of grievances, snippets of correspondence and text messages, excerpts of his own state and federal legal research, portions of medical records, newspaper articles, and copies of complaints he has filed. *See generally*, (Doc. 1-1.) Nevertheless, as a pro se litigant, Witkowski will be afforded some leniency to compensate for his lack of legal training and his fillings are construed liberally. *See, Bernhardt v. Los Angeles County*, 339 F. 3d 920, 925 (9th Cir. 2003).

### III.    Non-Cognizable Claims/Lack of Jurisdiction

The federal habeas statute grants the United States District Courts jurisdiction to entertain petitions for habeas relief only from persons who are in custody in violation of the Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal district court does not "sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. *Smith v. McCotter*, 786 F. 2d 697, 700 (5th Cir. 1986).

### i.     Motions to Modify Sentence

Witkowski asks that his deliberate homicide sentence be modified. *See*, (Docs. 32 & 34.) This Court, however, lacks jurisdiction to act in the manner suggested by Witkowski.

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and federal statutes. *Rasul v. Bush*, 542 U.S. 466, 489 (2004). As a court of limited jurisdiction, this Court has an obligation to dismiss claims for which there is a lack of subject matter jurisdiction. *Demarest v. United States*, 718 F. 2d 964, 965 (9th Cir. 1983); *see also Attorneys Trust v. Videotape Computer Products, Inc*., 93 F. 3d 593, 594-95 (9th Cir. 1996). Federal district courts do not have appellate jurisdiction over state courts, whether by direct

appeal, mandamus, or otherwise. *See e.g., Rooker v. Fid. Trust Co*., 263 U.S. 413, 425-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *see also, MacKay v. Pfeil*, 827 F. 2d 540, 543 (9th Cir. 1987); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"). Thus, it would be entirely inappropriate to modify a lawful sentence ordered by a state court. Accordingly, these motions will be denied.

### ii.     Indictment by Grand Jury

Next, to the extent that Witkowski believes his rights were violated when he was charged by Information rather than indicted by a grand jury, the claim is wholly lacking in merit. The Fifth Amendment Grand Jury Clause, which guarantees indictment by grand jury in federal prosecutions, was not incorporated by the Fourteenth Amendment to apply to the states. *See, Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972)(noting that "indictment by grand jury is not part of the due process law guaranteed to state criminal defendants by the Fourteenth Amendment"); *Hurtado v. California, 110 U.S. 516, 535* (holding that the Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury); *see also Rose v. Mitchell*, 443 U.S. 545, 557 n. 7 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 118-119 (1975); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972);

*Beck v. Washington*, 369 U.S. 541, 545 (1962); *Gaines v. Washington*, 227 U.S. 81, 86 (1928).

Witkowski's belief that he was constitutionally entitled to indictment by a grand jury in his state matter, and that his constitutional rights were violated when he was prosecuted via information, is mistaken. Such claims have been consistently rejected as frivolous and wholly lacking in substantive merit. *See e.g.,* *Borra v. State*, Cause No. CV-24-109-GF-DWM, Or. at 4, f.n. 4 (D. Mont. Jan. 2, 2025)(collecting cases). To the extent that Witkowski's petition can be read to be raising an associated claim that defense counsel provided ineffective assistance by not challenging the manner in which he was charged, this claim finds no support in the law. Accordingly, it will be denied.

### iii.    Excessive Sentence

Following the change of plea hearing in his deliberate homicide case, but prior to sentencing, Witkowski was accused and charged with crimes relating to an attempted kidnapping of a guard at the Valley County Detention Center. *See e.g.*, (Doc. 1-1 at 14); (Doc. 32 at 1, 6). Despite the new charges, the district court followed the parties' recommended sentence in conjunction with the homicide case. Witkowski was later sentenced for aggravated kidnapping, and that sentence was ordered to run consecutively to the 80-year deliberate homicide sentence. *See e.g.*, (Doc. 24 at 11); (Doc. 34 at 1-2). It seems Witkowski believes the

15

combination of these two sentences violated his right to due process, resulting in an overly harsh sentence, that his attorneys should have challenged.

To the extent that Witkowski raises an ineffective assistance claim, this would properly be directed, if at all, to the attorney involved in the subsequent aggravated kidnapping matter and not the present challenge to his deliberate homicide judgment. Regarding Witkowski's apparent claim that the state courts misinterpreted and/or misapplied state sentencing law by running the sentences consecutively, the claim is not cognizable in these proceedings.

As set forth above, a violation of state law, without more, does not deprive a petitioner of a federal constitutional right. *Cooks v. Spalding*, 660 F. 2d 738, 739 (9th Cir. 1981), *cert. denied*, 455 U.S 1026 (1982). It has long been understood that a state may violate its own law without violating the United States Constitution. *Gryger v. Burke*, 334 U.S. 728, 731 (1948)("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."). To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *See Pully v. Harris*, 465 U.S. 37, 41 (1984). Witkowski has not shown that any state law violation occurred, much less that such error was "so arbitrary and fundamentally unfair" that it

16

violated his right to due process or equal protection. *See Jammal v. Van de Kamp*, 926 F. 2d 918, 920 (9th Cir. 1991)(quotation omitted).

While Witkowski may disagree with the district court's implementation of a consecutive aggravated kidnapping sentence, he has not shown the sentence itself is unlawful. Witkowski cannot convert this state law issue into one of federal import merely by invoking the specter of a due process violation. *See Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1996), *cert. denied* 522 U.S. 881 (1997). Witkowski's sentencing-related claim is not cognizable in federal habeas and will be denied.

## IV.    Remaining Claims

The State contends that several of Witkowski's claims and subclaims have not been properly exhausted in the state courts and are barred by the doctrine of procedural default.  While the argument is sound, a federal court is empowered to bypass a procedural issue in the interest of judicial economy when the claim clearly fails on the merits. *See, Flournoy v. Small*, 681 F. 3d 1000, 1004, n. 1 (9th Cir. 2012); *see also, Franklin v. Johnson*, 290 F. 3d 1223, 1232 (9th Cir. 2001); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)(noting that, in the interest of judicial economy, courts may proceed to the merits in the face of procedural issues).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a

district court may not grant habeas relief unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Id*. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

### i.    Ineffective Assistance of Counsel/Withdrawal of Guilty Plea

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). To obtain relief on a claim of ineffective assistance of counsel, one must show both that his attorney provided deficient performance, and that prejudice ensued as a result. *Strickland v. Washington*, 466 U.S. at 687-96.

To establish deficient performance, petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation fell within the "wide range" of

reasonable professional assistance. *Id*. at 689. Thus, in evaluating allegations of deficient performance the reviewing court's scrutiny of counsel's actions or omissions is highly deferential. *Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. The petitioner's burden is to show that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id*. at 687.

To establish prejudice, a habeas petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. When, as here, the state court adjudicated a habeas petitioner's ineffectiveness claim on its merits, AEDPA applies, and this Court's review of the claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Witkowski seeks to withdraw his guilty plea, and the request is intertwined with his allegations of ineffective assistance of counsel. *See generally*, (Doc. 31.) Specifically, Witkowski suggests he should be permitted to withdraw his plea due

to defense counsel engaging in wide-ranging deficient performance which resulted in his guilty plea not being entered voluntarily. (*Id.*)

Some constitutional rights are automatically waived by entering an unconditional guilty plea. This non-exclusive list includes the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), as well as the right to challenge constitutional defects which occur before entry of the plea. *United States v. Broce*, 488 U.S. 563, 573-74 (1989). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also, United States v. Caperell*, 938 F. 2d 975, 977(9th Cir. 1991)(a guilty plea generally waives all claims of a constitutional nature occurring before the plea.) Or, put another way, Witkowski's guilty plea bars him from obtaining federal habeas relief on the basis of pre-plea constitutional violations. *Hudson v. Moran,* 760 F. 2d 1027, 1029-30 (9th Cir. 1985).

A guilty plea breaks the chain of events that proceeded it in the criminal process. *Tollett*, 411 U.S. at 267. "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding,

final judgment of guilty and a lawful sentence." *Broce*, 488 U.S. 569.

Accordingly, a defendant convicted after a plea may therefore, "only attack the

voluntary and intelligent character of the guilty plea by showing that the advice

received from counsel was not within [the range of competence demanded of

attorneys in criminal cases.]" *Tollett*, 411 U.S. at 266.

Witkowski's initial statement to investigators was that he was the victim of a

carjacking and that he struck Ms. Garcia with his vehicle while he was fleeing the

scene. Witkowski acknowledged he was high on methamphetamine and had not

slept for a day and a half when the underlying incident occurred. Witkowski

maintains the carjacking account and asserts his counsel failed to adequately

investigate the black Dodge pickup and its occupants which were purportedly

involved in the carjacking. Witkowski claims counsel also failed to provide him

with all the photos of the crime scene, failed to enhance the train video, failed to

file this evidence into the state court record, and failed to file a motion for a change

of venue. *See generally*, (Doc. 31.) Witkowski insists that he wanted to go to trial

but was pressured to enter a guilty plea.

While Witkowski's allegations about his attorneys' pre-plea conduct are not

independent grounds for habeas relief, they are considered to the extent that they

relate to Witkowski's claim that he should be permitted to withdraw his guilty

plea. In the context of an ineffective assistance of counsel claim following a guilty

plea, a habeas petitioner must show (1) his "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985). Witkowski fails to meet this standard.

At a hearing on August 16, 2017, Witkowski appeared before Judge Laird and discussed the Plea Agreement he was entering into, as well as his Acknowledgment of Rights form. *See e.g.*, Trans. (Doc. 18-8 at 2-3). Judge Laird advised Witkowski that he was free to persist in his not guilty plea and proceed to trial; Witkowski indicated he understood. (*Id.* at 4.) Witkowski explained that he had reviewed all the evidence, that he knew the Court was not bound by the terms of the plea agreement, that he understood the maximum penalty allowed by law, and that if the Court accepted his guilty plea, he would not have the right to withdraw the plea. (*Id.* at 5-6.) Witkowski further indicated he understood his constitutional rights, including: the right to persist in his not guilty plea, the right to a jury trial, the right have witnesses testify on his behalf, the right to confront and cross-examine witnesses against him, the right not to be compelled to incriminate himself, the right to require that his guilt be proven beyond a reasonable doubt, and the right to be found guilty of any lesser included offenses. (*Id.* at 6-7.) Further, Witkowski recognized that by entering his guilty pleas, he was waiving these

22

rights.  (*Id*. at 7, 10.)

Witkowski was sworn and testified that he was entering his plea voluntarily, and that he had not been threatened or pressured to do so.  (*Id*. at 11.)  He again indicated his understanding of his constitutional rights and the nature of the plea agreement under oath.  (*Id*. at 12-13.)  Witkowski then testified under examination that on December 31, 2016, in Valley County, he knowingly caused the death of Evelynn Garcia, without any lawful excuse, while using a dangerous weapon.  (*Id*. at 13-14.)  Judge Laird found that an adequate basis supported the guilty plea, that Witkowski was acting under the advice of competent counsel, that he understood his rights, that he understood the charge, and that he understood the maximum potential penalty.  (*Id*. at 14-15.)  The court determined Witkowski was not under any physical, mental, or emotional defects which would cause him not to understand the proceedings, that he was not under the influence of any substances that affected his ability to understand the proceedings, that he was competent to aid in his own defense, and that his plea was entered knowingly, voluntarily, and intelligently.  (*Id.* at 15.)  The guilty plea was accepted.

Upon the court receiving a letter from Witkowski, written prior to his change of plea hearing, in which he presented complaints against counsel, Judge Laird held a hearing.  *See*, Trans. (Doc. 18-12.)  The Court outlined Witkowski's four basic complaints: that counsel had no interest in his case, that they failed to file

appropriate motions, that he was pressured into entering into a plea agreement, and an overall lack of contact with counsel. (*Id*. at 3.)

Regarding his complaint about a lack of interest, Witkowski stated he was able to discuss his concerns with counsel after the letter had been written and that the complaint primarily stemmed from the outset of his case while they were awaiting discovery. (*Id*. at 4:10-23.) As to the failure to file motions, Witkowski explained that the main motion he wanted to be filed was for a change of venue. (*Id*. at 5-6.) He indicated that his attorneys had discussed the matter with him "a little" but that he was not satisfied with the discussion. (*Id*. at 6:1-6.) He acknowledged that he did not understand all of the elements that went into preparing such a motion. (*Id*. at 6:7-9.) Mr. Matthews explained to the court that they had considered filing a motion for a change of venue, but that such a motion did not find support in the case law and that defense counsel agreed that they did not believe a good faith basis existed in fact or law to support the filing of such a motion. (*Id*. at 6-7.) Witkowski did not respond or further object to counsels' explanation.

In relation to the change of plea, Witkowski stated he had no additional reasons supporting his claim that he felt pressured to take the plea agreement and acknowledged that he no longer felt the way he did at the time of writing the letter. Witkowski stated he did not believe he was pressured into entering into the

agreement. (*Id*. at 7-8.) Defense counsel informed the Court that they thought the plea agreement was Witkowski's best option but understood that from their client's perspective that he had a choice between "two bad options." (*Id*. at 8:11-22.)

Regarding his complaint about having limited contact with counsel, Mr. Matthews acknowledge that his Billings law office was 5 hours away from the Valley County Detention Center, but he attempted to have periodic, in person contact with Witkowski, including taking flights to see him, as the case progressed. Although in person contact was not as frequent as Mr. Matthews would have liked, it was regular, and they also talked on the phone. (*Id*. at 9: 10-19.) Mr. Toavs acknowledged that with his office being physically closer, he took it upon himself to have regular contact, phone calls, and written correspondence with Witkowski. (*Id*. at 9-10.)

Witkowski did not indicate any additional concerns during the hearing regarding the performance of counsel. (*Id*. at 10.) At the conclusion of the hearing, Witkowski informed Judge Laird that he would like to proceed with his defense team. Defense counsel indicated they would not be filing a motion to withdraw Witkowski's guilty plea; Witkowski did not object. (*Id*. at 13-14.) Witkowski was advised that sentencing hearing would proceed as previously scheduled, again Witkowski raised no objection. (*Id*. at 14.)

As set forth above, sentencing occurred on October 2, 2017. The court

followed the parties' joint recommendation and imposed the sentence contemplated by the plea agreement.

It was not until four years later, in December of 2021, following his sentencing on the attempted kidnapping and the denial of his direct appeal of the deliberate homicide sentence, that Witkowski attempted to withdraw his guilty plea and filed his postconviction petition challenge to the deliberate homicide judgment. *See*, (Docs. 18-22 & 18-23.) Thus, it appears that it was only once he received a sentence he was unhappy with, particularly the consecutive attempted kidnapping sentence, that Witkowski challenged the nature of his plea in the homicide case.

As set forth herein, the record reveals that Witkowski's guilty plea was knowingly and voluntarily entered. His claims to the contrary find no support in the record. Similarly, although Witkowski insists before this Court that he always wanted to go to trial, the record indicates otherwise. The same can be said of Witkowski's claims that either defense counsel or the prosecution pressured him into entering a guilty plea. In light of *Hill*, there is no reasonable probability that Witkowski would have gone to trial had his attorneys performed differently. Or put another way, the state court's finding that his guilty plea was voluntary was reasonable.

Moreover, the Montana Supreme Court reasonably applied *Strickland* in denying Witkowski's IAC claims and affirming his judgment and conviction. The

26

state court's finding that Witkowski's defense attorneys were not ineffective is not contrary to or an unreasonable application of federal law. Witkowski's claim that counsel was ineffective for failing to file a motion to change venue is defeated by the record. Counsel explained why they believed such a motion to be frivolous given the facts of the case and Montana law. Witkowski acknowledged his understanding of the decision at the hearing before Judge Laird. Defense counsel's failure to file a motion believed to be frivolous is not deficient performance withing the meaning of *Strickland*. *Rupe v. Wood*, 93 F. 3d 1434, 1444-45 (9th Cir. 1996); *see also*, *United States v. Quintero-Barranza,* 78 F. 3d 1344, 1349 (9th Cir. 1995)(counsel not obligated to file futile motions). Accordingly, Witkowski cannot show that counsel performed deficiently by failing to file the change of venue motion. Witkowski also suggests now that counsel should have filed a motion to suppress his statement. *See*, (Doc. 1-1 at 4, 9.) But this issue was never presented during the course of his criminal proceedings, including his hearing in which he discussed potentially filing the change of venue motion. Witkowski provides no support for the legal validity of this suppression motion, accordingly, counsel was not obligated to present it.

Similarly, Witkowski faults counsel for failing to adequately investigate the black Dodge pickup that was allegedly involved in the carjacking and failing to file photos and the train video into evidence. The Court has independently reviewed

27

the train video and fails to see how it supports Witkowski's theory of innocence.  It does not clearly show another vehicle at the railroad tracks, much less that a black Dodge pickup, or individuals from the pickup were engaging in illegal activity, including an attempted carjacking.  Generally, in a habeas context to make a credible claim of actual evidence, a petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995).  The video and photographic evidence relied upon by Witkowski is neither newly discovered nor is it of the kind or character that would support a credible claim of actual innocence.

Moreover, as Witkowski was informed by the state courts, because he entered into a plea agreement and no trial occurred, there was no corresponding duty for counsel to introduce items into evidence.  Similarly, to the extent that Witkowski believes counsel should have "offered defenses" or sought out lesser included offense, *see* (Doc. 1-1 at 2-3, 7), such acts would have had to have been undertaken in the course of a trial.  Witkowski also suggests that counsel should have sought a less onerous plea agreement or offered up his knowledge of the drug trade in Yellowstone County as consideration for a more lenient plea offer.  (*Id*. at 2-3.)  As explained by counsel, however, the state was not interested in offering a plea to a lesser charge or offering additional consideration to Witkowski and "the

28

plea deal was the plea deal." (*Id*. at 13, 15-16.)

The failure of counsel to take a futile action or make a meritless argument can never be deficient performance. *Boad v. Raines*, 769 F. 2d 1341, 1344 (9th Cir. 1985). Thus, Counsel did not perform deficiently under *Strickland's* first prong. Even if Witkowski could somehow show deficient performance, he fails to articulate how he was prejudiced or how any of this information would have affected his decision to plead guilty. Because Witkowski cannot demonstrate a reasonable probability that the result of the state proceedings would have been any different, he fails to establish prejudice. *See, Strickland*, 466 U.S. at 687, 694. Witkowski's general claims that counsel failed to adequately investigate, failed to pursue plea negotiations, failed to present defenses, or failed to properly evaluate and handle the evidence finds no support in the record.

Judicial scrutiny of counsel's performance is highly deferential. The Court cannot second-guess counsel's assistance after conviction. *Strickland*, at 689. The benchmark relative to ineffective assistance of counsel claims is whether counsel's conduct undermined the adversarial process to the extent the proceeding cannot be relied on as having a just result. *Id*. at 686. Here, the state court did not err in concluding that trial counsels' evaluation of the evidence was not constitutionally deficient. In this matter, there is no evidence that exculpates Witkowski.

Witkowski takes issue with the fact that he pled guilty to causing the death

29

of Ms. Garcia by striking her with his vehicle but maintains he did not stab her or strike her with the tire iron. Unfortunately for Witkowski, as discussed in detail during his sentencing hearing, the forensic evidence, particularly the blood/blood spatter documented from inside the vehicle, as well as the blood evidence obtained from his clothing and Ms. Garcia's clothing, points directly to Witkowski having caused the stab wounds. The tire iron that was later discovered inside the vehicle between the console and car seat, after Witkowski had abandoned the vehicle, also points to use by Witkowski. The kitchen knife believed to have been used in the attack was later discovered near the residence Witkowski approached for assistance following the incident. But the knife was not discovered until after the snow had melted indicating that it had been intentionally concealed. Both items' location and the circumstances surrounding their recovery suggest use by Witkowski in the course of the homicide, rather than by the unidentified masked car jackers. *See generally*, Sent. Trans. (Doc. 18-14.)

Witkowski refers to the State presenting "circumstantial evidence," but it was not improper for the State to discuss this information during the course of the sentencing hearing. *See, United States v. Franklin*, 18 F. 4th 1105, 1114 (9th Cir. 2021)(holding that the Confrontation Clause and the rules of evidence do not apply at sentencing.) This same forensic evidence, of which Witkowski and counsel were aware of prior to his entry of plea, did not change. Moreover, the time to

mount evidentiary challenges or attempt to raise reasonable doubt would have been at trial, as Witkowski acknowledged during his change of plea hearing, and not years after entry of judgment.

While Witkowski maintains that he only pled guilty to striking Ms. Garcia with his vehicle and in so doing causing her death, there was other substantial evidence that indicated Witkowski was responsible for additional injuries suffered by Garcia. Regardless, Witkowski testified in open court that he was responsible for Garcia's death. The State argued for the sentence it had agreed to and Witkowski received the sentence for which he bargained. While Witkowski may now take issue with the State's presentation of the forensic evidence, he fails to show how he was prejudiced or that there was a likelihood of a substantially different result. *Richter*, 562 U.S. at 112. Witkowski has not presented any credible evidence that other individuals were involved in or responsible for the death of Ms. Garcia.

In light of all of these factors, coupled with the record of Witkowski's lower court proceedings, the state court reasonably applied *Strickland* in denying his claims.[4] The decision of the state court denying Witkowski's IAC claims must be

---

[4] In the supplement to his petition, Witkowski suggests additional ineffective claims that fail to make prima facie showing. For example, he alleges counsel failed to advise him of his right to appeal, (Doc. 1-1 at 4), but as set forth above, Witkowski filed a direct appeal and was represented by counsel. Witkowski states that counsel erred by not challenging the 5-year period of post release supervision he received at sentencing, (Id. at 6), but Witkowski received no such sentence. *See*, Judg. (Doc. 18-15.) He also states counsel prevented him from responding to the

is afforded deference under § 2254(d) and the "doubly deferential" standard at play in these proceedings. *Pinholster*, 563 U.S. at 190. Moreover, Witkowski has not shown that the advice he received from counsel was not within the range of competence demanded of his defense counsel. *See, Tollett*, 411 U.S. at 266. Thus, the attack on the voluntary nature of his plea fails; the Court finds Witkowski's guilty plea to deliberate homicide was entered voluntarily and intelligently. The motion to withdraw his plea will be denied.

## Additional Claims

The claims discussed below are largely not proper in the present proceeding given the finding that Witkowski's guilty plea was voluntary, and that counsel did not provide ineffective assistance in conjunction with the entry of his plea. But each claim also lacks merit. Witkowski repeatedly asserts he has been denied fair consideration of his claims, and that the State is unjustly arguing for dismissal of the claims on procedural grounds. *See e.g.*, (Doc. 24 at 2-4); (Doc. 25 at 8); (Doc. 26 at 1, 7); (Doc. 28 at 3-4.) Accordingly, each claim will be briefly addressed.

## ii. *Brady* violation

Witkowski argues that a *Brady* violation occurred when the state failed to disclose the complete train video. The Court understands Witkowski to believe

---

State's evidence at sentencing, (Doc. 1-1 at 4), but Witkowski was given the opportunity to address the court and affirmative elected not to do so. *See*, Trans. (Doc. 18-14 at 135:17-22.)

that  since there were two trains passing by the Valley County intersection at issue, there should have been either an additional video or a more complete video available to him.  *See*, (Doc. 1 at 4); (Doc. 1-1 at 2.)

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Court held that "suppression by the prosecution of evidence favorable to an accused…violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." Under *Brady*, prosecutors are responsible for disclosing "evidence that is both favorable to the accused and material either to guilt or punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985)(internal quotation marks omitted).  The failure to turn over such evidence violates due process. *Wearry v. Cain*, 577 U.S. 385, 392 (2016)(per curiam).  The prosecutor's duty to disclose material evidence favorable to the defense "is applicable even though there has been no request by the accused and encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

"There are three components to a true *Brady* violation: '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Benson v. Chappell*, 958 F. 3d 801, 831 (9th Cir. 2020)(*quoting Strickler*, 527 U.S. at 281-82.)  "The

terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases." *Benn v. Lambert*, 283 F. 3d 1040, 1053 n. 9 (9th Cir. 2002). Failure to disclose evidence by the prosecution is prejudicial "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. A "reasonable probability" of a different result exists when the failure to disclose "undermines confidence in the outcome of the trial." *Id*. at 678.

In the instant case, there was no *Brady* violation. As an initial matter, there was no suppression. Aside from his own conclusions, Witkowski has not shown that a more complete or favorable video exists. Thus, there was nothing for the State to withhold from Witkowski. Additionally, as set forth above, review of the train video does not reveal a second vehicle. While this may be due to the rather poor quality of the recording itself, even if there were a second vehicle shown, it does not establish that that the existence of another vehicle is material to Witkowski's guilt or innocence. *United States v. Jernigan*, 492 F. 3d 1050, 1053 (9th Cir. 2007)(en banc). Or put another way, Witkowski has not shown that had this evidence existed and been disclosed, there was a reasonable probability sufficient to undermine confidence in the outcome of his proceedings. *Bagley*, 473 U.S. at 682. Because no *Brady* violation occurred, Witkowski cannot show that the was any corresponding violation in conjunction with the plea-bargaining

proceedings. This claim will be denied.

### iii.    Judicial Bias

Witkowski alleges that Judge Laird erred by referring to his juvenile record at sentencing and told him to "be careful what he said," which he took as a threat. (Doc. 1 at 5.)  Respondents assert that Witkowski changed the nature of this claim on postconviction appeal and, accordingly, the claim is not properly exhausted and is now procedurally defaulted.  (Doc. 18 at 146-47.)  While Respondents' position is well-taken, the claim fails on the merits.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.  *See*, *In re Murchison,* 349 U.S. 133, 136 (1955).  But a petitioner claiming judicial bias must overcome a "presumption of honesty and integrity" on the part of the judge.  *See*, *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Moreover, a claim of judicial bias based upon improper conduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge's conduct was improper; rather, the question is whether the state judge's conduct "rendered the [proceedings] so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F. 3d 734, 740 (9th Cir.1995) (citations omitted).  A state judge's conduct must be significantly averse to a defendant before it violates constitutional requirements of due process and warrants federal intervention.  *Id*.

Witkowski has made no such showing.

Witkowski first claims that Judge Laird erred by referring to his juvenile record during the sentencing hearing. But under Montana sentencing policy and law, courts are not limited to consideration of offenses committed while the offender is an adult. *See*, (Doc. 18 at 149)(*citing* MCA §46-18-101(2)(b) and *State v. Nichols*, 222 Mont. 71, 80-81, 720 P. 2d 1157, 1163 (1986)). Thus, consideration of Witkowski's entire criminal history was not improper under state law. As set forth above, Judge Laird followed the parties' recommendation in imposing sentence. Even if Witkowski were to believe that the sentence imposed somehow demonstrated bias, adverse rulings alone are insufficient to make such a showing. *See*, *Litkey v. United States*, 510 U.S. 540, 556 (1994); *Larson v. Palmateer*, 515 F. 3d 1057, 1067 (9th Cir. 1995). This portion of the claim fails.

Witkowski also faults Judge Laird for "threatening" him when she told him to "be careful what you say." (Doc. 1 at 5.) But a review of the substitution of counsel hearing where this statement occurred provides relevant context.

After Judge Laird advised Witkowski of his right to remain silent, the following exchange took place:

Judge Laird:        However, you do have to provide some sort of factual basis to the Court regarding the allegations that you have made in your request for substitution of counsel. So, you're going to have to consider your responses very carefully so that you do not prejudice yourself. Do you understand?

| Witkowski: | Yes, ma'am. |
|---|---|
| Judge Laird: | And you may consult with your counsel who are present before you respond. Do you understand? |
| Witkowski: | Yes, ma'am. |

(Doc. 18-12 at 2-3.)

Respondents argue this record shows Judge Laird was advising Witkowski of his rights and attempting to prevent him from inadvertently making an incriminating statement without understanding the statement could later be used against him. (Doc. 18 at 150.) The argument is valid; Witkowski has not shown a threat was made by Judge Laird. The rest of the hearing transcript shows that Judge Laird was thorough and patient in exploring Witkowski's dissatisfaction with counsel and providing him an opportunity to explain his grievances. Witkowski has demonstrated neither bias on the part of Judge Laird nor the appearance of impropriety. *Greenway v. Schriro*, 653 F. 3d 790, 806 (9th Cir. 2011); *Carter v. Galaza*, 491 F. 3d 1119, 1131 (9th Cir. 2007). Because there is no indication that Judge Laird acted improperly, much less in a manner that rendered the proceedings so fundamentally unfair as to violate due process, this claim will be denied in its entirety.

### iv.    Prosecutorial Misconduct

Witkowski now claims that the prosecution threatened and intimidated him by stating that if he rejected the plea agreement they would make sure he "never

got out of prison." (Doc. 1 at 5.) Witkowski presented a similar claim in his

postconviction petition, but did not present the precise claim on appeal therefrom.

Respondents point out that the claim is unexhausted and procedurally defaulted.

While they are correct, the claim also lacks merit.

In the underlying matter, the State had the authority to seek a life sentence

without the possibility of parole for the offense of deliberate homicide. *See*, (Doc.

18 at 144-45)(*citing* MCA §§45-5-102(2) & 46-18-202(1)). Further, given the

violent nature of the offense and Witkowski's abandonment of the victim in the

road when she was severely injured but not yet dead, Respondents note that the

State very well may have sought a life without parole sentence had Witkowski not

accepted the plea agreement. Further, Witkowski's counsel believed a life

sentence was possible. (*Id*. at 145.)

Pleading guilty to avoid the risk of a guilty verdict and lengthy sentence

does not make the process constitutionally infirm. The *Brady* court observed:

> We decline to hold, however, that a guilty plea is compelled and
> invalid under the Fifth Amendment whenever motivated by the
> defendant's desire to accept the certainty or probability of a lesser
> penalty rather than face a wider range of possibilities extending from
> acquittal to conviction and a higher penalty authorized by law for the
> crime charged.

*Brady v. United States*, 397 U.S. 742, 755 (1970). Thus, Witkowski's decision to

plead guilty to avoid the risk of a harsher sentence does not mean that the plea was

involuntary or improperly induced by the State. Further, in the give and take of

38

plea bargaining, there is no element of retaliation or misconduct "so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S 357, 363 (1978).  The Ninth Circuit has explained that if a defendant rejects a plea offer he retains no right to the rejected sentence:

> Having rejected the offer of a lesser sentence, he assumes the risk of receiving a harsher sentence.  If defendants could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear.  Defendants would lose nothing by going to trial…The reality of plea bargaining is that "[o]nce the defendant elects to go to trial, all bets are off."

*United States v. Carter*, 804 F. 2d 508, 513 (9th Cir. 1986)(citations omitted.)

Thus, Witkowski had no right to an 80-year sentence following trial and faced the very real possibility of a life sentence without parole.  He has not shown that the prosecutorial conduct he alleges "so infected the [proceedings] with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Witkowski fails to demonstrate that the alleged acts on the part of the State during plea bargaining were unlawful, much less that he was denied the right of anything to which he was entitled.  Witkowski has not demonstrated a viable claim for prosecutorial misconduct, the claim will be denied.

## V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254

Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

Witkowski has not made a substantial showing that he was deprived of a constitutional right.  The Montana Supreme Court's denial of his IAC claims entitled to deference under the AEDPA.  Moreover, because his plea was entered voluntarily, his pre-plea constitutional claims are not properly before the Court. To the extent that his remaining claims are properly presented, they also lack merit. Reasonable jurists would find no basis to encourage further proceedings.  A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1.  The Petition (Doc. 1) is DENIED with prejudice.

2.  Witkowski's motion to withdraw his guilty plea (Doc. 31) is DENIED for the reasons stated above.

3.  Witkowski's motion to modify his sentence (Doc. 32) and amended motion to modify his sentence (Doc. 34) are DENIED for the reasons stated above.

40

4. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

5. A certificate of appealability is DENIED.

DATED this 7th day of November, 2025.

_____
Donald W. Molloy, District Judge
United States District Court